# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOY M. WOODRUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-326-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Joy M. Woodrum requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on December 8, 1977, and was 29 years old at the time of the most recent administrative hearing. She has an eleventh grade education and previously worked as an advertising design technician and certified nurse's aide. The claimant alleges she has been unable to work since May 5, 2004, because of diabetes mellitus, neuropathy, asthma, obesity, arthritis in the feet, hypertension, GERD, depression, and anxiety.

**Procedural History**

On May 5, 2004, the claimant protectively filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Both applications were denied. ALJ Deborah L. Rose conducted a hearing and found that the claimant was not disabled on March 28, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.[2]

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*,

---

[2] The claimant alleged an initial onset date of June 18, 1999. However, she amended the date to May 5, 2004, at the administrative hearing. In the decision, the ALJ determined that the claimant maintained insured status only through June 2000, so the amendment of her onset date in effect constituted a withdrawal of her claim for disability insurance benefits under Title II (Tr. 15-16).

that she could lift and/or carry ten pounds occasionally and five pounds frequently; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 20). The ALJ concluded that the claimant could return to her past relevant work as an advertising design technician (Tr. 26).

**Review**

The claimant contends that the ALJ erred: (i) by failing to document the file with regard to her condition; (ii) by failing to recognize all of her severe impairments; (iii) by failing to include all of her limitations in the RFC; and, (iv) by improperly analyzing her credibility. In her second contention, the claimant argues that the ALJ erred by finding her depression and anxiety were not severe impairments at step-two of the sequential analysis. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly consider the claimant's mental impairment.

The record reveals that the claimant was assessed with anxiety and depression as early as July 2001 and was taking Prozac at that time (Tr. 185). By August 2001, the claimant reportedly was taking Prozac and Xanax (Tr. 149, 156, 174, 182). In August 2003, treatment notes from the Medical Center of Southeastern Oklahoma indicated that the claimant's migraine headaches were anxiety and stress induced (Tr. 192-93). Treatment notes from the Durant Family Medicine Clinic showed that the claimant was diagnosed with anxiety and depression in August 2002 and prescribed Paxil (Tr. 228-31) and suffered from anxiety attacks in September 2003 (Tr. 216). The claimant was in a domestic violence situation and was assessed with extreme anxiety disorder (Tr. 218-221). By June 2004, the claimant and

her husband were legally separated, and she had decreased her caffeine intake to help with her anxiety (Tr. 212-13). At her July 2004 appointment, the claimant complained of palpitations but indicated that her medication was helping her headaches (Tr. 208-09). By November 2004, she continued to suffer from depression and complained that her medication was no longer working. She was assessed with anxiety and depression and given samples of Cymbalta (Tr. 283-84).

The claimant underwent a mental examination with Dr. Mohan Das, M.D., in August 2004. She complained of experiencing "panic attacks, anxiety attacks, [and] depression" since around 1988. She reported having a "lack of energy and interest and problems focusing for the past few years." Upon examination, Dr. Das found the claimant to be "somewhat reticent and guarded." He described her mood and affect as "mildly to moderately anxious and depressed with some ideas of worthlessness and guilt feelings." Her recent and remote memory functions were intact, but she had problems with serial seven subtraction. Dr. Das judged her fund of general knowledge and her insight and judgment to be limited and believed she was functioning "at an average to low average intellectual level with somatic preoccupation." The claimant had problems sleeping and had no friends or hobbies. She blamed her difficulties of getting along with others on her anxiety and panic attacks. When asked why she was not working, the claimant explained, "I have to take care of the twins, can't get along with people, I get frequent panic attacks, can't handle work stress." Dr. Das concluded that the combination of the claimant's anxiety, depression, panic attacks, medical problems, responsibility for her twins, and difficulty with the public "may interfere with her

ability to reason and make social, occupational and personal adjustments." He suggested that the claimant "seek psychiatric treatment, including medication and counseling to help her deal with the above symptoms and learn healthier coping skills and stress management." He assessed the claimant, *inter alia*, with generalized anxiety disorder/panic disorder and depressive disorder NOS (Tr. 247-50).

State agency psychologist Carolyn Goodrich, Ph.D., reviewed the claimant's records in November 2004 and completed a Psychiatric Review Technique ("PRT") form evaluating the claimant for affective disorders and anxiety-related disorders. She concluded that the claimant suffered a mild restriction in activities of daily living, moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 291-304). She also opined in a mental RFC assessment that the claimant was moderately limited in her ability to understand, remember and carry out detailed instructions and in her ability to interact appropriately with the public. In conclusion, Dr. Goodrich found that the claimant could understand and perform simple tasks and some complex ones, could interact appropriately with others on a superficial level, and could adapt to a work situation (Tr. 305-07). In March 2005, Dr. Goodrich's findings were affirmed by agency psychologist Margaret McKinney, Ph.D. (Tr. 291, 307).

The ALJ determined that the claimant had severe impairments of diabetes mellitus, neuropathy, asthma, obesity, and arthritis in the feet, but she concluded that the claimant's hypertension, GERD, depression, and anxiety were non-severe impairments that did not result in significant work-related limitations. With regard to her depression and anxiety, the

ALJ noted that the claimant received only prescription medication and had not received any inpatient or outpatient mental health treatment. The ALJ also analyzed the claimant's mental impairment in accordance with the special technique outlined in 20 C.F.R. § 416.920a and determined that the claimant was only mildly limited in her activities of daily living, social functioning, and concentration, persistence or pace and that the record included no objective evidence that the claimant suffered from episodes of decompensation (Tr. 17-19). *See Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). Based on this assessment, she did not include any mental limitations in the RFC determination.

However, in assessing whether the claimant's mental impairments were severe, the ALJ failed to analyze (or even mention) the findings of agency psychologist Dr. Goodrich on the PRT form and on the mental RFC assessment, *i. e.*, that the claimant had a moderate degree of limitation in maintaining social functioning and maintaining concentration, persistence or pace which resulted in moderate functional limitations in the ability to understand, remember and carry out detailed instructions and in the ability to interact appropriately with the public and ultimately limited the claimant to the performance of simple tasks and some complex ones and interaction with others on a superficial level, or the

adoption of the findings by another agency psychologist Dr. McKinney. *See, e. g.*, *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). *See also* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)."). The ALJ's failure to discuss the agency psychologists' opinions is problematic because the VE testified that an individual who could perform only "simple non complex, non detailed jobs" would not be able to perform the claimant's past relevant work (Tr. 367).

Nor did the ALJ explain why she discussed only portions of Dr. Das's examination findings. She mentioned the claimant's report to Dr. Das of her daily activities and that taking care of her children "[took] up most of her day[,]" but the ALJ failed to discuss Dr. Das's conclusion that the combination of the claimant's anxiety, depression, panic attacks, medical problems, responsibility for her twins, and difficulty with the public "may interfere

with her ability to reason and make social, occupational and personal adjustments." (Tr. 18, 247-49). It was error for the ALJ to "pick and choose" between Dr. Das's findings without any explanation. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219. *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Finally, the ALJ's determination that the claimant's mental impairment is not severe appears to be based in part on the fact that the claimant has not received any inpatient or outpatient mental health treatment. However, a lack of psychological or psychiatric in-patient or out-patient treatment does not in and of itself support a finding that the claimant's mental impairment was not severe, *see, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment.") [unpublished opinion], and the claimant clearly took prescription medication for her depression and anxiety over a period of several years.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairment. On remand,

if the ALJ concludes that the claimant does have a severe mental impairment, she should determine the claimant's functional limitations, include them in an appropriate RFC, and then determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 13th day of January, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**